## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROSE M. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 06-603 JJF |
| | ) | |
| v. | ) | |
| | ) | |
| WALMART #2555, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT WAL-MART STORES EAST, LP'S
## OPENING BRIEF IN SUPPORT OF ITS
## <u>MOTION FOR SUMMARY JUDGMENT</u>

POTTER ANDERSON & CORROON LLP
Kathleen Furey McDonough (#2395)
Sarah E. DiLuzio (#4085)
1313 North Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801
(302) 984-6000
kmcdonough@potteranderson.com
sdiluzio@potteranderson.com

*Attorneys for Defendant Wal-Mart Stores East, L.P.*

Date: December 14, 2007

**TABLE OF CONTENTS**

**PAGES**

TABLE OF AUTHORITIES ..................................................................................iii

NATURE AND STAGE OF PROCEEDINGS ....................................................1

SUMMARY OF ARGUMENT ...........................................................................3

STATEMENT OF FACTS .................................................................................4

ARGUMENT....................................................................................................10

I.  SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PLAINTIFF
    CANNOT DEMONSTRATE ANY MATERIAL ISSUES OF FACT AND
    DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF
    LAW ...................................................................................................10

    A.  General Summary Judgment Standards...................................................10

II.  PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF
     DISCRIMINATION ..........................................................................11

    A.  Plaintiff Has No Direct Evidence of Discrimination ................................12

    B.  Plaintiff Cannot Establish That Wal-Mart's Legitimate Basis For Her
        Termination – Insubordination – Is a Pretext .........................................14

III.  WAL-MART IS ENTITLED TO SUMMARY JUDGMENT ON
      PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM....................15

    A.  To the Extent Plaintiff Advances a Hostile Work Environment Claim,
        She Has Failed to Establish A Prima Facie Case......................................15

    B.  Plaintiff's Harassment Claims Are Precluded Because She Failed to
        Avail Herself of Wal-Mart's Open Door or Reporting Policies..............17

IV.  PLAINTIFF SUFFERED NO RETALIATION ...........................................19

    A.  Plaintiff's Retaliation Claims Fail Because She Has No Evidence That
        DuPont's Proffered Reasons Are Pretext For Retaliation........................20

V.  WAL-MART IS ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFF'S PAY DISCRIMINATION CLAIM.......................................21

A.  Plaintiff's Claim is Unsupported by the Undisputed Facts......................21

B.  Plaintiff's Disparate Pay Claims Are Precluded Because She Failed to
     Avail Herself of Wal-Mart's Open Door or Reporting Policies..............23

CONCLUSION...........................................................................................................24

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                      <u>PAGES</u>

*Adams v. Wal-Mart Stores, Inc.*,
   324 F.3d 935 (7th Cir. 2003) ........................................................................17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).........................................................................................10

*Baker v. Wilmington Trust Co.*,
   320 F. Supp. 2d 196 (D. Del. 2004).............................................................21

*Baldwin County Welcome Center v. Brown*,
   466 U.S. 147 (1984).........................................................................................24

*Booker v. Brown & Williamson Tobacco Co., Inc.*,
   879 F.2d 1304 (6th Cir. 1989) .....................................................................15

*Boykins v. Lucent Technologies, Inc.*,
   78 F. Supp. 2d 402 (E.D. Pa. 2000) ...........................................................23

*Brewer v. Quaker State Oil Refining Corp.*,
   72 F.3d 326 (3d Cir. 1995)............................................................................15

*Burlington Indus., Inc. v. Ellerth*,
   524 U.S. 742 (1998)...................................................................................18, 23

*Burlington Northern & Santa Fe Railway Co. v. White*,
   126 S. Ct. 2405 (2006)....................................................................................19

*Carballo v. Log Cabin Smokehouse*,
   399 F. Supp. 2d 715 (M.D. La. 2005).........................................................14

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)........................................................................................10

*Choe-Rively v. Vietnam Veterans of America Chapter 83*,
   135 F. Supp. 2d 462 (D. Del. 2001).............................................................12

*Davis v. City of Phila. Water Dep't*,
   57 Fed. Appx. 90 (3d Cir. 2003).................................................................22

*Dungee v. Northeast Foods, Inc.*,
   940 F. Supp. 682 (D. N.J. 1996) .................................................................12

*Elrod v. Sears Roebuck and Co.,*
   939 F.2d 1466 (11th Cir. 1991) ..................................................................13

*Faragher v. City of Boca Raton,*
   524 U.S. 775 (1998)..........................................................................17, 23

*Fuentes v. Perskie,*
   32 F.3d 759 (3d Cir. 1994)....................................................................14

*Gordon v. National R.R. Passenger Corp.,*
   564 F. Supp. 199 (E.D. Pa. 1983) ........................................................20

*Hare v. Potter,*
   220 Fed. Appx. 120 (3d. Cir. 2007)......................................................19

*Hawkins v. PepsiCo, Inc.,*
   203 F.3d 274 (4th Cir. 2000) ..............................................................20

*Healy v. New York Life Ins. Co.,*
   860 F.2d 1209 (3d Cir. 1988)................................................................15

*Johnson v. E.I. DuPont de Nemours & Co.,*
   60 F. Supp. 2d 289 (D. Del. 1999).......................................................21

*Jones v. Hosp. of Univ. of Pa.,*
   2004 U.S. Dist. LEXIS 15711 (E.D. Pa. Aug. 6, 2004)......................22

*Jones. v. School District of Philadelphia,*
   198 F.3d 403 (3d Cir. 1999)..................................................................11

*Kershaw v. Aspin,*
   1994 U.S. Dist. LEXIS 17092 (E.D. Pa Dec. 5, 1994)........................23

*Maidenbaum v. Bally's Park Place, Inc.,*
   1994 U.S. Dist. LEXIS 18631 (D. N.J. Dec. 28, 1994)........................20

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,*
   842 F.2d 590 (2d Cir. 1988)..................................................................20

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973).......................................................................12, 19

*Muehlhausen v. Bath Iron Works,*
   811 F. Supp. 15 (D. Me. 1993) .............................................................14

*Pastore v. Bell Tel. Co. of Pennsylvania,*
   24 F.3d 508 (3d Cir. 1994)....................................................................17

*Petr v. Delaware Air Nat'l Guard*,
    1995 U.S. Dist. LEXIS 14484 (D. Del. Sept. 28, 1995)........................................................10

*Reeves v. Sanderson Plumbing Products, Inc.*,
    530 U.S. 133 (2000)........................................................................................................12

*Rhodes v. Guiberson Oil Tools*,
    75 F.3d 898 (5th Cir. 1991) ..........................................................................................13

*Rooks v. Girl Scouts of Chicago*,
    1996 WL 459941 (7th Cir. Aug. 9, 1996)......................................................................13

*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993).......................................................................................................11

*Texas Dep't of Community Affairs v. Burdine*,
    450 U.S. 248 (1981)..................................................................................................11, 12

*White v. BFI Waste Services, LLC*,
    375 F.3d 288 (4th Cir. 2004) ........................................................................................21

*Wiers v. Barnes*,
    925 F. Supp. 1079 (D. Del. 1996).................................................................................10

**STATUTES**

42 U.S.C. § 2000(e)-(5)(f)(1) ..............................................................................................11

42 U.S.C. § 2000e-3(a) ........................................................................................................19

42 U.S.C. § 2000e-5(e) ........................................................................................................21

Title VII of the Civil Rights Act of 1964............................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(c) ...........................................................................................................10

Rule 56(e)............................................................................................................................23

## NATURE AND STAGE OF PROCEEDINGS

This is a hostile work environment, retaliation and unfair pay case brought by *pro se* Plaintiff Rose M. Bailey against her former employer, Defendant Wal-Mart Stores East, LP.[1] Plaintiff, who is African American, worked as a sales associate in Store #2555 in New Castle, Delaware from May 25, 1999 until Wal-Mart terminated her for insubordination on May 4, 2005.

Plaintiff filed her Complaint against Wal-Mart on September 27, 2006, claiming that Wal-Mart discriminated against her in violation of Title VII of the Civil Rights Act of 1964. (D.I. 2)    Plaintiff's Complaint incorporates the allegations contained in the charge of discrimination she filed with the Equal Employment Opportunity Commission ("EEOC"). (A5[2])[3]   In her Complaint, Plaintiff alleges that Wal-Mart's decision to terminate her was motivated by her race (African American) and was in retaliation for her having informed a supervisor that she was reporting her for "harassment."  Plaintiff also claims that Wal-Mart paid her less than "non-black" co-workers, in violation of Title VII.

Wal-Mart filed its Answer to the Complaint on April 4, 2007, denying that it discriminated or retaliated against Plaintiff at any point during her employment.  Wal-Mart properly served its First Set of Interrogatories and First Request for Production Directed to Plaintiff on August 23, 2007.  (D.I. 13, 14)  Plaintiff did not respond to any of Wal-Mart's written discovery requests, but did appear for deposition on October 11, 2007.  (D.I. 15) Plaintiff did not initiate any discovery in this matter.

---

[1]  Plaintiff improperly identifies "Wal-Mart Store #2555" as the defendant in this matter.  The appropriate defendant is Wal-Mart Stores East, LP, which is the operating entity for Store #2555.

[2]  Pertinent documentary evidence, excerpts from Plaintiff's deposition transcript and supporting affidavits are included in Defendant's Appendix to its Opening Brief in Support of its Motion for Summary Judgment, referred to herein as ("A__"), and filed contemporaneously herewith.

[3]  On July 6, 2006, the EEOC dismissed Plaintiff's charge with a no cause finding and issued a Notice of Right to Sue.  (A6)

Wal-Mart now moves the Court to enter summary judgment in its favor on all of Plaintiff's claims and submits this Opening Brief in support of its motion.

## SUMMARY OF ARGUMENT

I.  Wal-Mart Is Entitled To Judgment As A Matter Of Law Because Plaintiff Failed To Establish A Genuine Issue Of Material Fact And Cannot Support All The Elements Of Her Claims.

II.  Wal-Mart Is Entitled To Summary Judgment On Plaintiff's Race Discrimination Claim Because Plaintiff Cannot Establish Her Prima Facie Case.

III.  Wal-Mart Is Entitled To Summary Judgment On Plaintiff's Hostile Work Environment Claim.

IV.  Wal-Mart Is Entitled To Summary Judgment Because Plaintiff Suffered No Retaliation.

V.  Wal-Mart Is Entitled To Summary Judgment On Plaintiff's Pay Discrimination Claim Because Plaintiff Earned Either The Same Or More Than Comparable Associates.

## STATEMENT OF FACTS[4]

On May 25, 1999, Wal-Mart hired Plaintiff as a sales associate in the Apparel Department of Store #2555. (A5)  Wal-Mart terminated Plaintiff on May 4, 2005 for insubordination. (*See* Exit Interview Form, A72; Lawrence Aff. ¶6, A2; Sinclair Aff. ¶6, A4) Prior to the conduct that led to her termination, Plaintiff's performance as an associate was considered to be average. (*See* Plaintiff's Performance Evaluations, A73-A84)

### Wal-Mart's Policies

When Wal-Mart hired plaintiff, she received a copy of Wal-Mart's Associate Handbook and received training on Wal-Mart's policies. (*See* Handbook Acknowledgement, A68; Training Log, A71) The handbook contains an explanation of Wal-Mart's three "core values," the first of which is Respect for the Individual. (A11)  In furtherance of this value, Wal-Mart also promulgated a Discrimination and Harassment Prevention Policy. (A57-59)  In part, that policy provides, "We are committed to preventing discrimination and harassment in all aspects of our business.  We will take all reasonable measures to do so.  However, if we are not aware that discrimination or harassment is taking place, we cannot address the situation." (A58)  The policy goes on to advise associates that they must immediately report any conduct that may be a violation of the policy to any salaried member of management or to the Wal-Mart Ethics Helpline.  Plaintiff received both written and computer-based training on these policies. (A71)

Because "Respect for the Individual" is a core Wal-Mart value, the Associate Handbook prohibits "[r]ude or abusive conduct toward a customer or Associate" and advises that such conduct is grounds for "immediate termination." (A31)  Another Wal-Mart Policy, "Coaching for Improvement," identifies "Rude/Abusive conduct toward a Customer member or another

---

[4] Wal-Mart assumes Plaintiff's testimony as true for purposes of its Motion for Summary Judgment only.

Associate" as "Gross Misconduct." (A66) The Coaching policy also explains that an Associate who is found to have engaged in gross misconduct is subject to immediate termination. *Id.*

### Plaintiff's Employment History

Wal-Mart consistently evaluated Plaintiff to be an average, or slightly above average, associate and compensated her accordingly. (*See* Plaintiff's Performance Appraisals, A73-84) Wal-Mart conducts an annual evaluation of each associate to review that associate's work performance during the previous year. At the evaluation, Wal-Mart provides the associate with a rating that represents the associate's level of performance. That rating also determines the amount of the associate's wage increase. An associate may receive one of three ratings: "Below Expectations," "Meets Expectations," or "Exceeds Expectations." In 2005, Wal-Mart's pay structure provided for associate increases as follows: a "Below Expectations" rating received no increase, a "Meets Expectations" rating received a $.40 per hour increase, and an "Exceeds Expectations" rating received a $.55 per hour increase.

In her Complaint, Plaintiff alleges that Wal-Mart discriminated against her on the basis of her race in the manner in which it determined her hourly rate of pay. (D.I. 1) In support of this allegation, Plaintiff asserts that while she only received a $.40 raise during her 2005 annual evaluation, two other female associates, Ms. Swift, who is Caucasian, and Ms. Sen, who is of Indian descent, allegedly received $.50 increases during their 2005 annual evaluations. *Id.*

Plaintiff earned either the same or more than the associates she identified in her Complaint. Wal-Mart conducted Plaintiff's 2005 annual review on or about April 19, 2005. In that review, Wal-Mart rated Plaintiff's performance as meeting expectations. Accordingly, consistent with Wal-Mart's pay structure, Wal-Mart increased Plaintiff's hourly wage by $.40.

(*See* April 19, 2005 Performance Appraisal, A74)  At the time of her May 4, 2005 termination, Plaintiff thus earned $10.75 per hour.  *Id.*

Wal-Mart hired Ms. Swift on or around May 7, 1999 (slightly *before* Plaintiff).  During Ms. Swift's May 2005 performance evaluation, Wal-Mart rated her performance as meeting expectations and gave her the corresponding increase of $.40 per hour – just as Plaintiff had received.  At the time Plaintiff was terminated, Ms. Swift earned $10.50 per hour, which is less than Plaintiff earned at that time.  (*See* Swift's 2005 Performance Evaluation, A86)

Wal-Mart hired Ms. Sen on or around November 20, 1999 (within months of Plaintiff's hire).  At Ms. Sen's November 2005 annual evaluation, Wal-Mart rated her performance as exceeding expectations, and increased her hourly wage by $.55.  As such, in November 2005, Ms. Sen earned $10.75 per hour, the same amount that Plaintiff earned at the time of her termination.  (*See* Sen's 2005 Performance Evaluation, A88)

### Events Leading to Plaintiff's Termination

In the Spring of 2005, Plaintiff started to exhibit troubling behavior.  On March 30, 2005, Plaintiff engaged in a verbal altercation on the sales floor with a Service Manager, Pearl Robinson, who is also African American.  (Plaintiff's Dep. Tr. at 69, A160; 71-75, A162-166) According to Plaintiff's description of the incident, she and two other associates were talking when Ms. Robinson approached them looking for assistance and asked "aren't you two ladies working?" (*Id.* at 72, A163)  Plaintiff testified that, in response, she laughed at Ms. Robinson. *Id.*  When Ms. Robinson asked a second time whether anyone was working in the Infants Department who could assist a customer with a crib, Plaintiff responded that she was on a break, although she had yet to leave the sales floor.  *Id.*  Again, according to Plaintiff's account, Plaintiff then followed Ms. Robinson to the front of the store and confronted her about the

manner in which she had addressed Plaintiff. *Id.* Ms. Robinson raised her voice in response to Plaintiff's criticisms. *Id.* It was only after another manager intervened that the confrontation, unfolding in full view of customers, ended and the parties moved to the management office. (Plaintiff's Dep. Tr. at 74-75, A165-166)  Although Plaintiff violated Wal-Mart's policies by being rude and abusive towards a supervisor, management decided no further coaching was necessary at that time, in part because Ms. Robinson had not responded appropriately to the incident. (*Id.* at 78, A169)

Plaintiff's Complaint alleges that on April 29, 2005 she told Support Manager Cynthia Brittingham, a Caucasian female, that she was going to report her to the corporate office for "harassment." (D.I. 1)  Wal-Mart denies any such conversation took place.  Nonetheless, during her deposition, Plaintiff described an incident with Ms. Brittingham that occurred on April 29, 2005 in which Ms. Brittingham allegedly pushed a cart of merchandise at Plaintiff and told her to put it away. (Plaintiff's Dep. Tr. at 22-25, A110-113)  Interestingly, April 29, 2005 is the date Plaintiff identifies in her Complaint that she told Ms. Brittingham she intended to report her to the corporate office for harassment. (D.I. 1)  In her deposition testimony, however, Plaintiff denied that she told Ms. Brittingham she intended to report her that night. Q: "So did you tell Cindy you were going to report her that night?" A: "No.  I let Cindy have her way that night.") (Plaintiff's Dep. Tr. at 29-30, A117-118)  What is undisputed is that the relevant decision makers were not aware of this alleged incident. (Lawrence Aff. ¶8, A2; Sinclair Aff. ¶7,  A4)

Moreover, Plaintiff did not, in fact, report that she felt harassed or discriminated against to anyone at Wal-Mart during her employment. ( Plaintiff's Dep. Tr. at 36, A124; 41-42, A129-130; 57, A147; 104, A194)  It was not until after she was terminated that Plaintiff called the Wal-Mart Ethics hotline to complain that her termination was unfair. (*Id.* at 62, A152; 104, A194)

Even then, Plaintiff did not indicate that she believed her termination was motivated by her race. (*Id.* at 63, A153) Plaintiff's failure to report any alleged harassment is telling, particularly in light of the fact that Plaintiff was aware of Wal-Mart's policies in this regard, both those prohibiting workplace harassment and the Open Door Policy, which encouraged associates to discuss any concerns they had with management. (A60; Plaintiff's Dep. Tr. at 35-36, A123-124) Nonetheless, Plaintiff chose not to use either remedy. *Id.* ("I didn't use the Open Door Policy because there was no need.")

Barely a month after the March 30, 2005 altercation, Plaintiff was involved in another verbal altercation on the sales floor. (Plaintiff's Dep. Tr. at 16-17, A105-106; Lawrence Aff. ¶4, A1; Sinclair Aff. ¶4, A3) On May 2, 2005, Assistant Store Manager Radcliff Sinclair, an African American male, ordered Plaintiff to sort returned merchandise. (Lawrence Aff. ¶4, A1) Support Manager Cynthia Brittingham, who is Caucasian, noticed Plaintiff was not complying with this direction and informed Mr. Sinclair. (Sinclair Aff. ¶¶2-3, A3) Plaintiff then began to yell at Ms. Brittingham for reporting her. (*Id.* ¶4, A4) Mr. Sinclair heard Plaintiff yelling from several aisles away, approached Plaintiff, instructed her to stop yelling and immediately directed her to his office. (*Id.* ¶4, A4) Once there, Mr. Sinclair informed Plaintiff that her behavior was grounds for immediate discharge. (Lawrence Aff. ¶5, A2) Because this incident occurred near the end of Plaintiff's scheduled shift, she was simply permitted to complete her shift and go home. (Plaintiff's Dep. Tr. 44, A132)

The following day, Mr. Sinclair discussed the situation with the Store Co-Manager Jennifer Lawrence, also an African American. (*Id.* at ¶2, A1) Mr. Sinclair recommended Plaintiff's termination. (Sinclair Aff. ¶6, A4) Ms. Lawrence, in consultation with the Store Manager, was responsible for determining the appropriate discipline as a result of Ms. Bailey's

behavior on the sales floor. (Lawrence Aff. ¶5, A2)  On May 4, 2005, Ms. Lawrence and former

Assistant Manager Toby Fields met with Plaintiff for an exit interview.  (*See* Lawrence Aff. ¶6,

A2; Exit Interview Form, A72; Plaintiff's Dep. Tr. at 15, A105)  Plaintiff was informed during

that exit interview that she was being terminated for insubordination.  (Lawrence Aff. ¶6, A2;

Plaintiff's Dep. Tr. at 56, A146)  During the exit interview, Ms. Lawrence offered Ms. Bailey an

opportunity to explain her actions.  (Lawrence Aff. ¶5, A2)  At that time, Ms. Bailey did not

dispute that the altercation occurred, nor did she apologize for her actions.  (Lawrence Aff. ¶5,

A2)  On the contrary, Ms. Bailey indicated that she believed yelling at Ms. Brittingham on the

sales floor was acceptable.  (Lawrence Aff. ¶5, A2)   Ms. Lawrence determined that the

appropriate discipline was termination.  *Id.*  Plaintiff's race (African American) played no role in

the decision made by Ms. Lawrence  to terminate her employment.  (Lawrence Aff. ¶8, A2)

At no time during her exit interview, or at any other time, did Plaintiff indicate that she

felt she was being harassed or discriminated against by any member of the management team.

(Lawrence Aff. ¶7, A2)

## ARGUMENT

I.    **SUMMARY JUDGMENT IS APPROPRIATE BECAUSE PLAINTIFF CANNOT DEMONSTRATE ANY MATERIAL ISSUES OF FACT AND DEFENDANT IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

A.    **General Summary Judgment Standards.**

Summary judgment is required where "the pleadings, depositions, answers to interrogatories, and admissions on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Wiers v. Barnes*, 925 F. Supp. 1079, 1085 (D. Del. 1996) (citing Fed. R. Civ. P. 56(c)). Further, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* As this Court has recognized, "the mere existence of <u>some</u> evidence in support of the nonmoving party will not be sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue." *Petr v. Delaware Air Nat'l Guard*, 1995 U.S. Dist. LEXIS 14484, *5 (D. Del. Sept. 28, 1995) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (emphasis added).

In this case, there is no dispute regarding the relevant facts. Plaintiff failed to present *any* evidence that Wal-Mart discriminated or retaliated against her in any way. Because the evidence is clear that Plaintiff was terminated for insubordination, a legitimate business reason, Wal-Mart is entitled to judgment as a matter of law.

Plaintiff was asked several times during her deposition what evidence, facts and/or witnesses she had to support the claims set forth in the Complaint. Plaintiff testified repeatedly that she has no evidence and only herself as a witness. (A211-212) Moreover, Plaintiff testified that race "could have been a factor" in her termination – not that she had any evidence, other than the fact that she is African American, that it was. (A183) *See Jones. v. School District of Philadelphia*, 198 F.3d 403, 414 (3d Cir. 1999) (finding unsupported allegations of discrimination predicated on personal beliefs irrelevant). In fact, Jennifer Lawrence, the supervisor who made the decision to terminate Plaintiff, is African American. Plaintiff has not adduced even a shred of evidence that Ms. Lawrence's decision was influenced in any way by Plaintiff's race. Nor has Plaintiff pointed to any facts in support of her claim that Wal-Mart terminated her because she allegedly told another supervisor that she intended to report her for harassment. Indeed, Ms. Lawrence had no knowledge of any such statement. Finally, Plaintiff's claims of unequal pay are factually unsupported by the objective evidence. Thus, Wal-Mart is entitled to summary judgment on Plaintiff's claims.

## II.  PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF DISCRIMINATION.

Plaintiff claims that Wal-Mart terminated her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e)-(5)(f)(1) ("Title VII"). To establish a claim for race discrimination, Plaintiff must show that Wal-Mart intentionally discriminated against her on the basis of her race. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). To do so, she must demonstrate that Wal-Mart treated her differently than other similarly situated employees who were not within her protected class, and that the reason for the different

11

treatment was unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

In this case, Plaintiff has no direct evidence of discriminatory motive. In the absence of direct proof, Plaintiff's claim can survive only if she can prove intentional discrimination by inference, according to the well-established standard set forth in *McDonnell Douglas*. *See Sarullo*, 352 F.3d at 797. Assuming Plaintiff can make a *prima facie* showing, the burden then shifts to Wal-Mart to proffer a legitimate nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802. This burden is a relatively light one, and is met when Wal-Mart proffers a lawful reason for its actions. *Burdine*, 450 U.S. at 256-58. Once Wal-Mart does so, the presumption of discrimination produced by Plaintiff's *prima facie* case disappears. *Id.* The burden then shifts back to Plaintiff to show that Wal-Mart's purported legitimate business reason is merely a pretext for discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000); *McDonnell Douglas*, 411 U.S. at 804. At all times, the ultimate burden of persuasion remains with Plaintiff. *Reeves*, 530 U.S. at 146; *Hicks*, 509 U.S. at 506. Moreover, a plaintiff's unsupported speculation that an employer acted with discriminatory animus is insufficient to withstand summary judgment. *Choe-Rively v. Vietnam Veterans of America Chapter 83*, 135 F. Supp. 2d 462, 475 (D. Del. 2001).

Plaintiff does not have evidence to establish a *prima facie* case of discrimination, and alternatively, cannot show that Wal-Mart's actions were merely a pretext for race discrimination.

### A.    Plaintiff Has No Direct Evidence of Discrimination.

The fact that Plaintiff was terminated by an African-American decision-maker makes it implausible that her termination was motivated by her (African American) race. *See Dungee v. Northeast Foods, Inc.*, 940 F. Supp. 682 n.3 (D. N.J. 1996) (fact that decision maker is member

of plaintiff's protected class "weakens any possible inference of discrimination"); *Elrod v. Sears Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) (stating "it is difficult for plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff"); *Rooks v. Girl Scouts of Chicago*, No. 95-3516, 1996 WL 459941, at *3 (7th Cir. Aug. 9, 1996) ("There can be no compelling inference of age discrimination because [the decision maker] herself is also in the protected category."); *Rhodes v. Guiberson Oil Tools*, 75 F.3d 898, 1002 (5th Cir. 1991) (stating "proof that all of the decision makers were members of the same race as the complaining employee would considerably undermine the probability that race was a factor in the employment decision").

Even discounting that fact, however, there is no evidence that Wal-Mart ever discriminated against Plaintiff on the basis of her race. Both Ms. Lawrence and Mr. Sinclair determined that termination was the appropriate discipline because Plaintiff violated Wal-Mart's Coaching for Improvement policy, which prohibits abusive and rude conduct towards any individual. (*See* Lawrence Aff. ¶5, A2) Ms. Lawrence's decision to terminate Plaintiff was consistent with Wal-Mart's core value of "Respect for the Individual." Indeed, it was the only appropriate response to Plaintiff's rude, unprofessional, and insubordinate conduct. Even when given the opportunity to apologize or acknowledge the impropriety of her behavior, Plaintiff refused. Further, this was the second of two situations within a few weeks where Plaintiff berated a supervisor on the sales floor. In both situations, Plaintiff was unapologetically rude and insubordinate, first towards Ms. Robinson, and then to Ms. Brittingham, both of whom were simply requesting that Plaintiff follow management directives. Plaintiff's defiance, exhibited in view of customers and fellow associates, constituted insubordination and was grounds for

13

immediate termination pursuant to Wal-Mart's Policy against gross misconduct. Plaintiff's race was simply not a factor in Wal-Mart's termination decision. (*See* Lawrence Aff. ¶9, A2)

**B.    Plaintiff Cannot Establish That Wal-Mart's Legitimate Basis for Her Termination – Insubordination – Is a Pretext.**

Wal-Mart terminated Plaintiff solely because she violated Wal-Mart's policy by being rude and insubordinate on the sales floor. Plaintiff has not, and cannot, establish that the non-discriminatory legitimate reason advanced by Wal-Mart for her termination should be disbelieved or that race discrimination was the more likely cause of Wal-Mart's decision. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (outlining employee's burden to prove employer's legitimate reasons for employment action were pretext for unlawful discrimination). As made clear by the Third Circuit Court of Appeals, "to discredit the employer's proffered reason [as pretextual], the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Id.* at 765.

Here, Wal-Mart's legitimate business reasons for terminating Plaintiff are well-supported. After Plaintiff failed to perform her job duties as instructed, Ms. Brittingham reported her lack of compliance to Mr. Sinclair. In response, Plaintiff screamed at Ms. Brittingham, a supervisor, on the sales floor. (*See* Sinclair Aff ¶4, A4.) Mr. Sinclair overheard Plaintiff. (*Id.*) If that were not enough, Plaintiff showed no remorse for her transgression and refused to apologize or even acknowledge that her actions were inappropriate. (*See* Lawrence Aff. ¶5, A2) Plaintiff has not proven that the reason advanced by Wal-Mart for her termination is false or a pretext for race discrimination. *See, e.g. Carballo v. Log Cabin Smokehouse*, 399 F. Supp. 2d 715, 724 (M.D. La. 2005) (employee's emotional outbursts and poor attitude a legitimate non-discriminatory reason for action); *Muehlhausen v. Bath Iron Works*, 811 F. Supp.

15, 17-20 (D. Me. 1993) (employer presented legitimate non-discriminatory reason where employee yelled obscenity at a supervisor).

The Court's inquiry into pretext, "is not an independent assessment of how [it] might evaluate and treat" an employee. *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988). On the contrary, an employer has the right to make business judgments, particularly when the decision involves subjective factors that it deems essential to certain positions. *Id.* at 1220; *see also Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (stating "we do not sit as a super-personnel department that reexamines an entity's business decisions."). Thus, although Plaintiff may believe that she should not have been terminated for berating a manager on the sales floor, that belief does not establish that Wal-Mart's decision to terminate her for insubordination was a pretext for unlawful discrimination. *See, e.g., Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312 (6th Cir. 1989) ("An employee is not protected when he violates legitimate rules and orders of his employer, disrupts the employment environment, or interferes with the attainment of his employer's goals.").

## III. WAL-MART IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM.

### A. To the Extent Plaintiff Advances a Hostile Work Environment Claim, She Has Failed to Establish A Prima Facie Case.

Plaintiff's Complaint generally identifies "harassment" as a cause of action. Assuming that Plaintiff's amorphous allegations are an attempt to state a claim for employment discrimination due to a hostile work environment, Plaintiff has to establish: (1) that she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondent superior

liability. *See Aman v. Cort Furniture*, 85 F.3d 1074, 1081 (3d. Cir. 1996). In analyzing a hostile work environment claim, the Court must look at the totality of the circumstances including the frequency of the conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the work performance of the employee. *Id*. Plaintiff's unsubstantiated claims of "harassment" do not rise to the level of hostile or pervasive and regular.

Wal-Mart did not subject Plaintiff to any discriminatory treatment. Plaintiff herself testified that Ms. Brittingham "harassed" her because she was a good worker, not because of her race. "I got to thinking, is this job worth someone harassing you because you are a good worker?" (A105) Plaintiff believed that Ms. Brittingham asked more of her than she did other employees because Plaintiff was a hard worker who would get her own work done and still have time to do additional work. (A104-105; A140-141) In this regard, Plaintiff testified as follows:

> Q:   Why do you think [Ms. Brittingham] singled you out?
> A:   Because she wanted some work to get done which backed up on her and she didn't want to look bad in front of [the Store Manager] because she wanted to become assistant store manager.
>
>                    \* \* \*
>
> Q:   I'm asking about Cindy, your perception that Cindy singled you out, do you believe that she did that based on your race?
> A:   I don't know what it was, race, work or what. I cannot answer her thoughts.

(A140-141)

Plaintiff's vague and non-specific allegations of unfair treatment are insufficient to support a hostile work environment claim. *See Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994) (holding that non-moving party may not rely "upon conclusory allegations . . . to establish a genuine issue of material fact."); *Adams v. Wal-Mart Stores, Inc.,*

324 F.3d 935, 939 (7th Cir. 2003) (finding insufficient facts to raise an inference of discrimination where plaintiff made unsubstantiated allegations that the Caucasian decision maker admonished, monitored, threatened to fire, and failed to promote African Americans more than Caucasians).

### B.     Plaintiff's Harassment Claims Are Precluded because She Failed to Avail Herself of Wal-Mart's Open Door or Reporting Policies.

Plaintiff admits that, during her employment with Wal-Mart, she never reported any mistreatment or harassment. (A194) Plaintiff was asked "Miss Bailey, at any time during your employment with Wal-Mart, did you report to management or the 1-800 number or to anyone that you were being harassed or discriminated against on the basis of your race?" Plaintiff answered "No." *Id.*

As established in *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), an employee is required to place an employer on notice of alleged harassment so that the employer has an opportunity to remedy the situation. Employers have an absolute defense to charges of harassment where: (1) the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.* The second prong is normally satisfied by a showing that the employee failed to follow the employer's complaint procedure. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 771 (1998).

Wal-Mart does not tolerate any form of discrimination or harassment based on an individual's status, including, but not limited to race. (*See* Harassment Policy, A57) Wal-Mart's "zero tolerance" policy applies regardless of whether the conduct rises to the level of unlawful discrimination or harassment. To ensure any harassment is punished, the policy instructs any

associate who believes that he or she has been the victim of harassment, discrimination, or inappropriate conduct to immediately report the offensive conduct to a salaried member of management. (*Id.*) Further, Plaintiff had the absolute right, pursuant to Wal-Mart's Open Door Policy, to bring any of her concerns to management in a confidential setting without fear of retaliation. (*See* Open Door Policy, A60).

Plaintiff testified repeatedly that she was well aware of these policies, but chose not to utilize them. "I didn't use the Open Door Policy because there was no need;" (A123) "So, no, we have policies. . . . Did I report it to another manager? No, I did not." (A129-130) Indeed, Wal-Mart trained Plaintiff on the Discrimination & Harassment Prevention Policy. (Plaintiff's Training Log, A70) Plaintiff unreasonably failed to take advantage of the many preventative or corrective opportunities provided by Wal-Mart by not reporting any alleged harassment. Accordingly, Plaintiff's hostile work environment claim must be dismissed.

**IV.  PLAINTIFF SUFFERED NO RETALIATION.**

Title VII forbids an employer from "discriminating against" an employee because that individual opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). *See Burlington Northern & Santa Fe Railway Co. v. White*, 165 L. Ed. 2d 345, 126 S. Ct. 2405, 2408 (2006). If a plaintiff succeeds in establishing a prima facie case of retaliation, the familiar burden-shifting framework of *McDonnell Douglas* applies and the defendant must advance a legitimate, nonretaliatory or nondiscriminatory reason for its actions. If the defendant advances such a reason, the burden shifts back to the plaintiff to prove that the nonretaliatory or nondiscriminatory explanation is merely a pretext for discrimination. *See Hare v. Potter*, 220 Fed. Appx. 120, 127 (3d. Cir. 2007). In order for Plaintiff to defeat Wal-Mart's motion for

summary judgment, she must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (citations and quotations omitted). In other words, Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Wal-Mart's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* (citations and quotations omitted).

Plaintiff's retaliation claim fails because she has adduced no evidence that Wal-Mart's proffered reasons for her termination are a pretext. As discussed above, Plaintiff admittedly did not report any allegations of harassment or discrimination to anyone before she was terminated. (A123; A129-130; A194) Instead, Plaintiff's retaliation claim relies upon the allegation that she told Ms. Brittingham she was going to "report her for harassment," thereby leading Ms. Brittingham to terminate her. (D.I. 1)

### A. Plaintiff's Retaliation Claims Fail Because She Has No Evidence That DuPont's Proffered Reasons Are Pretext For Retaliation.

Plaintiff's claim of retaliation fails as a matter of fact and law. Factually, Ms. Brittingham was not the decision maker and did not terminate Plaintiff. The actual decision maker, Ms. Lawrence, had no knowledge of any alleged conversation in which Plaintiff told Ms. Brittingham she planned to report her for harassment. *See, e.g., Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988) (holding that, to make out a prima facie case of retaliation, the employer must be aware of plaintiff's protected activity); *Maidenbaum v. Bally's Park Place, Inc.*, 1994 U.S. Dist. LEXIS 18631, at *37 (D. N.J. Dec. 28, 1994) (finding no evidence of discrimination where no showing was made that decision-maker

19

was aware of purportedly discriminatory policy); *Gordon v. National R.R. Passenger Corp.*, 564 F. Supp. 199, 204 (E.D. Pa. 1983) (same).   Furthermore, Plaintiff's claim that she threatened to report Ms. Brittingham is highly suspect in light of her knowledge of proper reporting procedures and failure to adhere to them.   Plaintiff's Complaint asserts that she told Ms. Brittingham on April 29, 2005 that she intended to report her to the main office for harassment. Plaintiff was not terminated until May 4, 2005.   Plaintiff admittedly did not report Ms. Brittingham to the main office, or anyone else, between August 29 and May 4.

In any event, even if Plaintiff's version of events is accepted, Plaintiff cannot show that the reason for her termination from employment - her blatant insubordination and yelling at a supervisor on the sales floor - was a pretext for retaliation.  *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279, n. 1 (4th Cir. 2000) (plaintiff failed to prove that employer's legitimate, non-discriminatory reason for termination, poor performance, was pretext where there was substantial evidence that employer was dissatisfied with plaintiff's performance before she complained of race discrimination), *cert. denied*, 531 U.S. 1031 (2000).  As discussed above, Ms. Lawrence acted in conformance with Wal-Mart's legitimate policies when she terminated Plaintiff for insubordination.   Plaintiff has not offered any evidence that Wal-Mart's reason is false or unworthy of credence.

Plaintiff relies solely upon her own belief that Ms. Brittingham manufactured the altercation in order to get her fired for threatening to report her for "harassment."  Mr. Sinclair witnessed Plaintiff's conduct and recommended that she be terminated, and he had no knowledge of Plaintiff's alleged statement to Ms. Brittingham.   (*See* Sinclair Aff. ¶7, A4)   Plaintiff's subjective belief that she was subject to retaliation, by itself, is simply insufficient.  *Baker v. Wilmington Trust Co.*, 320 F. Supp. 2d 196, 202 (D. Del. 2004) (plaintiff's conclusory

allegations were insufficient to support a claim for retaliation); *Johnson v. E.I. DuPont de Nemours & Co.*, 60 F. Supp. 2d 289, 297 (D. Del. 1999) ("Plaintiff's conclusory allegations do not constitute sufficient evidence to defeat a motion for summary judgment."). Accordingly, Wal-Mart is entitled to judgment as a matter of law on Plaintiff's claim of retaliation arising out of her separation from employment.

## V.    WAL-MART IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PAY DISCRIMINATION CLAIM.

### A.    Plaintiff's Claim is Unsupported by the Undisputed Facts.

Plaintiff's Complaint alleges that, during her 2005 review, she received a lower wage increase than similarly situated non-black employees[5]. Plaintiff's claim is empirically false. The two individuals Plaintiff identifies as "similarly situated non-black employees," both earned less than Plaintiff did at the time of her termination.

Wal-Mart gave Plaintiff an increase of $.40 per hour following her April 2005 review, which corresponded to the "Meets Expectations" rating she received. (A73-74) As described in the statement of facts, Ms. Swift (a Caucasian female) began working at Wal-Mart at approximately the same time as Plaintiff and therefore had the same level of service to the company. In her 2005 performance review, Wal-Mart rated Ms. Swift as meeting expectations and increased her hourly wage $.40 – just as it had with Plaintiff. (A85-86) At the time Plaintiff was terminated, Ms. Swift earned $10.50 per hour compared to Plaintiff's $10.75 per hour.

---

[5] Plaintiff's right of recovery on her disparate pay claim under Title VII is limited to alleged discriminatory acts that occurred within three hundred (300) days of the filing of her charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e); *White v. BFI Waste Services, LLC*, 375 F.3d 288, 292 (4th Cir. 2004) (only acts that occurred within three hundred day period immediately proceeding the filing of the administrative charge may be considered). Accordingly, Plaintiff's disparate pay claim is limited to her 2005 associate review and accompanying wage increase.

Plaintiff's second proffered comparator, Ms. Sen (an Indian female) is not a true comparator at all.  In order to show disparate treatment with regard to her wages, Plaintiff must identify "similarly situated" employees that were treated differently, or better, than she was treated.  In order to be "similarly situated" the individual must "'have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'"  *Davis v. City of Phila. Water Dep't*, 57 Fed. Appx. 90, 92 (3d Cir. 2003); *see also Jones v. Hosp. of Univ. of Pa.*, 2004 U.S. Dist. LEXIS 15711, (E.D. Pa. Aug. 6, 2004) (to establish comparators are "similarly situated" plaintiff must demonstrate that she was treated less favorably under <u>identical</u> circumstances) (emphasis supplied).  Ms. Sen is not similarly situated to Plaintiff because Ms. Sen received an "Exceeds Expectations" rating during her 2005 review. (A87-88) Wal-Mart then gave Ms. Sen the corresponding increase of $.55 per hour.  *Id.*  This increase brought Ms. Sen's wages to $10.75 per hour, which is the same amount that Plaintiff earned at the time of her termination. (*Compare* Sen's 2005 Evaluation, A88, to Plaintiff's 2005 Evaluation, A74) Moreover, contrary to Plaintiff's allegations, Ms. Sen was not less experienced and had, like Plaintiff, been with Wal-Mart since 1999.

The raise that an associate receives at his or her annual evaluation is based solely on work performance.  Wal-Mart gave Ms. Sen a higher increase than Plaintiff in 2005 because it rated Ms. Sen as exceeding expectations while it rated Plaintiff as only meeting expectations.  There was no disparate treatment.  Even Plaintiff testified that an associate who receives an "Exceeds Expectations" rating should receive a higher raise than an associate who receives a "Meets Expectations" rating, because the associate with the higher rating went "above and beyond." (A191)

**B.    Plaintiff's Disparate Pay Claims Are Precluded because She Failed to Avail Herself of Wal-Mart's Open Door or Reporting Policies.**

As explained above, Plaintiff was required to follow Wal-Mart's established complaint procedures to report any harassment or discrimination, including with regard to her pay. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 771 (1998). Plaintiff's charge of discrimination was the very first time she complained that her wage increase was disproportionately low compared to "non-black" co-workers. Because Wal-Mart has policies in place to redress claims of discrimination, Plaintiff's failure to avail herself of that policy precludes her recovery on this claim.

Finally, Plaintiff's failure to come forward with sufficient evidence to sustain her burden at this stage of the litigation cannot be excused simply because she is proceeding *pro se*. "Merely because a non-moving party is proceeding *pro se* does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *See Boykins v. Lucent Technologies, Inc.*, 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000); *aff'd without op.*, 29 Fed. Appdx. 100 (2002); *Kershaw v. Aspin*, 1994 U.S. Dist. LEXIS 17092 *5-6 (E.D. Pa. Dec. 5, 1994) ("While a pro se litigant must be afforded a more liberal interpretation of [his] complaint than a represented plaintiff, this judicial grace does not relieve the pro se plaintiff of the burden of coming forth with some evidence to rebut defense affidavits that refute [his] claims.") (citations omitted); *see also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) ("requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of vague sympathy for particular litigants").

## CONCLUSION

For all the forgoing reasons, it is hereby respectfully requested that this Court enter an Order granting Wal-Mart's Motion for Summary Judgment and dismissing Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

By: _Sarah E. DiLuzio_

Kathleen Furey McDonough (# 2395)
Sarah E. DiLuzio (#4085)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
kmcdonough@potteranderson.com - Email
sdiluzio@potteranderson.com - Email

*Attorneys for Defendant Wal-Mart Stores East, LP*

Date:   December 14, 2007

834804v4 / 31342

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify that on December 14, 2007, I electronically filed a true and correct copy of the foregoing **DEFENDANT WAL-MART STORES EAST, LP'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using CM/ECF which will send notification of such filing, which is available for viewing and downloading from CM/ECF, and mailed via first class mail a copy to plaintiff at the following address:

> Rose M. Bailey, *pro se*
> 612 Candlestick Lane
> Newark, Delaware  19702

> /s/ Sarah E. DiLuzio
> Sarah E. DiLuzio (#4085)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, Sixth Floor
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE  19899-0951
> Telephone:  (302) 984-6000
> Telefax:  (302) 658-1192
> E-mail:  sdiluzio@potteranderson.com

834804v4 / 31342