IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROSE M. BAILEY, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.  06-603 JJF |
| | ) | |
| v. | ) | |
| | ) | |
| WALMART #2555, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT WAL-MART STORES EAST, LP'S
PROPOSED FINAL PRETRIAL ORDER**

## I.  NATURE OF THE CASE

### A.  Plaintiff' Statement

As of February 28, 2008, Plaintiff has not provided Defendant with her statement of the nature of the case.

### B.  Defendant's Statement

This is an employment discrimination case.  Plaintiff *pro se* Rose M. Bailey ("Plaintiff") brought this action against her former employer, Defendant Wal-Mart Stores East, LP ("Wal-Mart").[1]  Plaintiff, who is African American, claims that she was terminated from employment in violation of Title VII.  Plaintiff worked as a sales associate in Store #2555 in New Castle, Delaware from May 25, 1999 until her employment with Wal-Mart was terminated on May 4, 2005 due to insubordination.

Plaintiff filed her Complaint against Wal-Mart on September 27, 2006, claiming that Wal-Mart discriminated against her in violation of Title VII of the Civil Rights Act of 1964.  Plaintiff's Complaint incorporates the allegations contained in the charge of discrimination she filed with the Equal Employment Opportunity Commission ("EEOC").  On July 6, 2006, the EEOC dismissed Plaintiff's charge with a no cause finding and issued a Notice of Right to Sue.  In her Complaint, Plaintiff alleges that Wal-Mart's decision to terminate her employment was motivated by her race (African American) and was in retaliation for her having informed a supervisor that she was reporting her for "harassment."  Plaintiff also claims that Wal-Mart paid her less than "non-black" co-workers, in violation of Title VII.

---

[1]  Plaintiff improperly identifies "Wal-Mart Store #2555" as the defendant in this matter. The appropriate defendant is Wal-Mart Stores East, LP, which is the operating entity for Store #2555.

In truth, Wal-Mart terminated Plaintiff because she engaged in a verbal altercation with a member of management on the sales floor of the store.

Wal-Mart denies that Plaintiff was terminated in violation of Title VII because: (1) Plaintiff cannot establish the elements of a discrimination claim; (2) Wal-Mart acted with legitimate, non-discriminatory reasons when it terminated Plaintiff's employment for insubordination; and (3) there is no evidence of pretext. To the extent Plaintiff advances a hostile work environment claim, Wal-Mart denies such claim because: (1) Plaintiff has failed to establish a prima facie case; (2) Plaintiff's unsubstantiated claims of "harassment" do not rise to the level of hostile or pervasive and regular; (3) Plaintiff's vague and non-specific allegations of unfair treatment are insufficient to support a hostile work environment claim and (4) Plaintiff's harassment claims are precluded because she unreasonably failed to avail herself of Wal-Mart's open door or reporting policies. Wal-Mart denies that Plaintiff was subjected to unlawful retaliation, and her retaliation claim fails because: (1) Plaintiff has adduced no evidence that Wal-Mart's proffered reasons for her termination are a pretext; and (2) Plaintiff did not report any allegations of harassment or discrimination to anyone before her employment was terminated. Furthermore, Wal-Mart denies that Plaintiff can succeed on her claim for pay discrimination because: (1) it is empirically false and unsupported by the undisputed facts; and (2) Plaintiff did not avail herself of Wal-Mart's established complaint procedures to report any harassment or discrimination, including with regard to her pay, that she was required to follow[2]. Finally, for the reasons set forth below, Plaintiff waived her right to contest the dismissal of her hostile work environment, retaliation and unfair pay claims.

Following the discovery period, in which the only evidence Plaintiff adduced was the deposition of her taken by Wal-Mart, a Motion for Summary Judgment and Supporting Opening Brief, Affidavits and Appendix were filed by Wal-Mart on December 14, 2007. In response, Plaintiff filed a handwritten document on February 6, 2008, attempting to support only one of her original claims – that Wal-Mart's decision to terminate her employment was somehow unlawful. Plaintiff did not mention, nor did she make any effort to rebut, Wal-Mart's arguments disproving her hostile work environment, retaliation or unfair pay claims. Accordingly, Plaintiff waived her right to oppose the arguments or controvert the facts set forth in Wal-Mart's Opening Summary Judgment Brief. On February 19, 2008, Wal-Mart filed its Reply Brief In Further Support Of Its Motion For Summary Judgment.

---

[2] Plaintiff's right of recovery on her disparate pay claim under Title VII is limited to alleged discriminatory acts that occurred within three hundred (300) days of the filing of her charge of discrimination with the EEOC. Accordingly, Plaintiff's disparate pay claim is limited to her 2005 associate review and accompanying wage increase.

## II.    JURISDICTION

The jurisdiction of the Court is not disputed. Jurisdiction exists by virtue of 42 U.S.C § 2000e-5.

## III.    STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO PROOF

### A.    Plaintiff' Statement

As of February 28, 2008, Plaintiff has not provided Defendant with a statement of facts which are admitted and require no proof.

### B.    Defendant's Statement

Defendant submits the following statement of facts which it believes requires no proof.

Defendant reserves the right to amend this list, and/or to respond to any objections Plaintiff makes to Defendant's statements.

Defendant further reserves its right to amend Section IV B herein, by submitting statements of facts which Defendant contends remain to be litigated, after Defendant receives Plaintiff's Sections III A and IV A to this Proposed Pretrial Order.

(1)    On May 25, 1999, Wal-Mart hired as a sales associate in the Apparel Department of Store #2555.

(2)    On May 4, 2005 Wal-Mart terminated Plaintiff for insubordination.

(3)    When Wal-Mart hired plaintiff, she received a copy of Wal-Mart's Associate Handbook and received training on Wal-Mart's policies.

(4)    The handbook contains an explanation of Wal-Mart's three "core values," the first of which is Respect for the Individual.

(5)    In furtherance of this value, Wal-Mart also promulgated a Discrimination and Harassment Prevention Policy. In part, that policy provides,

(a)    "We are committed to preventing discrimination and harassment in all aspects of our business.

(b)    We will take all reasonable measures to do so.

(c)    However, if we are not aware that discrimination or harassment is taking place, we cannot address the situation."

(6)    The policy states that associates must immediately report any conduct that may be a violation of the policy to any salaried member of management or to the Wal-Mart Ethics Helpline.

(7)    Plaintiff received both written and computer-based training on these policies.

(8)    Because "Respect for the Individual" is a core Wal-Mart value, the Associate Handbook prohibits "[r]ude or abusive conduct toward a customer or Associate" and advises that such conduct is grounds for "immediate termination."

(9)    Another Wal-Mart Policy, "Coaching for Improvement," identifies "Rude/Abusive conduct toward a Customer member or another Associate" as "Gross Misconduct."

(10)    The Coaching policy also explains that an Associate who is found to have engaged in gross misconduct is subject to immediate termination.

(11)    Wal-Mart consistently evaluated Plaintiff to be an average, or slightly above average, associate and compensated her accordingly.

(12)    Wal-Mart conducts an annual evaluation of each associate to review that associate's work performance during the previous year.

(13)    At the evaluation, Wal-Mart provides the associate with a rating that represents the associate's level of performance.

(14)    That rating also determines the amount of the associate's wage increase.

(15)    An associate may receive one of three ratings: "Below Expectations," "Meets Expectations," or "Exceeds Expectations."

(16)    In 2005, Wal-Mart's pay structure provided for associate increases as follows:

        (a)    "Below Expectations" rating received no increase;

        (b)    "Meets Expectations" rating received a $.40 per hour increase; and

        (c)    "Exceeds Expectations" rating received a $.55 per hour increase.

(17)    Plaintiff earned either the same or more than the associates she identified in her Complaint.

(18)    Wal-Mart conducted Plaintiff's 2005 annual review on or about April 19, 2005.

(19)    In that review, Wal-Mart rated Plaintiff's performance as meeting expectations.

4

(20)    Accordingly, consistent with Wal-Mart's pay structure, Wal-Mart increased Plaintiff's hourly wage by $.40.

(21)    At the time of her May 4, 2005 termination, Plaintiff thus earned $10.75 per hour.

(22)    Wal-Mart hired Ms. Swift on or around May 7, 1999 (slightly *before* Plaintiff).

(23)    During Ms. Swift's May 2005 performance evaluation, Wal-Mart rated her performance as meeting expectations and gave her the corresponding increase of $.40 per hour – just as Plaintiff had received.

(24)    At the time Plaintiff was terminated, Ms. Swift earned $10.50 per hour, which is less than Plaintiff earned at that time.

(25)    Wal-Mart hired Ms. Sen on or around November 20, 1999 (within months of Plaintiff's hire).

(26)    At Ms. Sen's November 2005 annual evaluation, Wal-Mart rated her performance as exceeding expectations, and increased her hourly wage by $.55.

(27)    As such, in November 2005, Ms. Sen earned $10.75 per hour, the same amount that Plaintiff earned at the time of her termination.

(28)    On March 30, 2005, Plaintiff engaged in a verbal altercation on the sales floor with a Service Manager, Pearl Robinson, who is also African American.

(29)    Plaintiff's conduct on March 30, 2005 violated Wal-Mart's policies, which prohibit being rude and abusive towards a supervisor.

(30)    On May 2, 2005, Plaintiff was involved in another verbal altercation on the sales floor.

(31)    On May 2, 2005, Assistant Store Manager Radcliff Sinclair, an African American male, ordered Plaintiff to sort returned merchandise.

(32)    On May 2, 2005, Support Manager Cynthia Brittingham, who is Caucasian, noticed Plaintiff was not complying with Mr. Sinclair's direction that Plaintiff sort returned merchandise, and informed Mr. Sinclair.

(33)    On May 2, 2005, Plaintiff then began to yell at Ms. Brittingham for reporting her to Mr. Sinclair for not following his direction.

(34)    On May 2, 2005, Mr. Sinclair heard Plaintiff yelling at Ms. Brittingham, from several aisles away, and he approached Plaintiff and instructed her to stop yelling and immediately directed her to his office.

(35)    On May 3, 2005, Mr. Sinclair discussed the May 2, 2005 incident with the Store Co-Manager Jennifer Lawrence, an African American.

(36)    Ms. Lawrence, in consultation with the Store Manager, was responsible for determining the appropriate discipline as a result of Plaintiff's behavior on the sales floor on May 2, 2005.

(37)    On May 4, 2005, Ms. Lawrence and former Assistant Manager Toby Fields met with Plaintiff for an exit interview.

(38)    On May 4, 2005, during the exit interview, Ms. Lawrence offered Plaintiff an opportunity to explain her actions and Plaintiff did not dispute that the altercation occurred, nor did she apologize for her actions.

(39)    On May 4, 2005, during her exit interview, Plaintiff was informed that she was being terminated for insubordination.

(40)    Plaintiff's race (African American) played no role in the decision made by Ms. Lawrence to terminate Plaintiff's employment.

(41)    At no time during her May 4, 2005 exit interview, or at any other time during her employment, did Plaintiff indicate that she felt she was being harassed or discriminated against by any member of the management team.

(42)    Plaintiff was aware of Wal-Mart's policies in this regard, both those prohibiting workplace harassment and the Open Door Policy, which encouraged associates to discuss any concerns they had with management.

(43)    Plaintiff has no direct evidence of discrimination.

## IV.    STATEMENT OF THE ISSUES OF FACT WHICH ANY PARTY CONTENDS REMAIN TO BE LITIGATED

### A.    By the Plaintiff

As of February 28, 2008, Plaintiff has not provided Defendant with her statement of issues which she contends remain to be litigated.

### B.    By the Defendant

Due to the fact that, as of February 28, 2008, Plaintiff has not provided Defendant with (1) her statement of facts which she believes requires no proof, and (2) her statement of issues which she contends remain to be litigated, Defendant reserves its right to amend Sections III B and IV B herein, after Defendant receives Plaintiff's Sections III A and IV A to this Proposed Pretrial Order.

Defendant's statement of facts are set forth in Section III B herein. Defendant does not believe that any of these facts are in dispute, however.

**V.    STATEMENT OF THE ISSUES OF LAW WHICH ANY PARTY CONTENDS REMAIN TO BE LITIGATED AND A CITATION OF AUTHORITIES RELIED UPON BY EACH PARTY**

### A.    By the Plaintiff

As of February 28, 2008, Plaintiff has not provided Defendant with her statement of issues of law that remain to be litigated.

### B.    By the Defendant

The following statement of issues of law that remain to be litigated includes any and all issues that remain to be litigated as of this date. Defendant reserves the right to modify this statement in accordance with the Court's ruling on Defendant's Motion for Summary Judgment and any further instructions from the Court. Defendant further reserves its right to amend this section after Defendant receives Plaintiff's statement.

Title VII Discrimination

1.    Whether Plaintiff has adduced sufficient evidence to support a prima facie case of race discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

2.    Whether Defendant has articulated legitimate, non-discriminatory business reasons for terminating Plaintiffs employment for insubordination on May 4, 2005. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

3.    Whether Plaintiff has adduced sufficient evidence to show that Defendant's reasons for its actions are pretextual or, more likely than not, the result of discriminatory animus on the basis of her race. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

4.    Whether Plaintiff has to adduced sufficient evidence that the decision makers involved in the decision to terminate her employment harbored any discriminatory animus. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Coulton v. Univ. of Pa.*, 237 Fed. Appx. 741, 748 (3d Cir. 2007).

Title VII Retaliation

5.    Whether Plaintiff has adduced sufficient evidence to support a prima facie case of retaliation in violation of Title VII. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

6.    Whether Defendant has articulated legitimate, non- retaliatory business reasons for terminating Plaintiffs employment for insubordination on May 4, 2005. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

7.    Whether Plaintiff has adduced sufficient evidence to show that Defendant's legitimate non-retaliatory, non-discriminatory reason, for terminating Plaintiffs employment for insubordination, is merely a pretext for discrimination. *See Hare v. Potter*, 220 Fed. Appx. 120, 127 (3d. Cir. 2007).

8.    Whether Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the Defendant, and or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

9.    Whether Plaintiff has shown that her protected activity had a determinative effect on Defendant's decision to terminate her employment for insubordination on May 4, 2005.

Discrimination Due to a Hostile Work Environment
(to the extent that Plaintiff advances such a claim)

10.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff's vague and non-specific allegations of unfair treatment are sufficient to support a hostile work environment claim. *See Pastore v. Bell Tel. Co. of Pennsylvania*, 24 F.3d 508, 511 (3d Cir. 1994)

11.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff has adduced sufficient evidence to show that she subjected to a hostile work environment, and that she suffered intentional discrimination, on the basis of her race. *See Aman v. Cort Furniture*, 85 F.3d 1074, 1081 (3d. Cir. 1996)

12.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff has adduced sufficient evidence to show that the alleged discrimination rises to the level of hostile or pervasive and regular. *See Aman v. Cort Furniture*, 85 F.3d 1074, 1081 (3d. Cir. 1996)

13.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff has adduced sufficient evidence to show that the alleged discrimination detrimentally affected her. *See Aman v. Cort Furniture*, 85 F.3d 1074, 1081 (3d. Cir. 1996)

14.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff has adduced sufficient evidence to show that the alleged discrimination would detrimentally affect a reasonable person of the same race in that position. *See Aman v. Cort Furniture*, 85 F.3d 1074, 1081 (3d. Cir. 1996)

15.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff has adduced sufficient evidence to show the existence of respondent superior liability. *See Aman v. Cort Furniture, 85 F.3d 1074, 1081 (3d. Cir. 1996).*

16.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Defendant exercised reasonable care to prevent and correct promptly any harassing behavior. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

17.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the Defendant or to avoid harm otherwise. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

18.    To the extent Plaintiff advances a claim for employment discrimination due to a hostile work environment, whether Plaintiff unreasonably failed failed to follow the employer's complaint procedure. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 771 (1998).

Pay Discrimination

19.    Whether Plaintiff has adduced sufficient evidence to show that she can succeed on her claim for pay discrimination.

20.    Whether Plaintiff failed to avail herself of Wal-Mart's established complaint procedures to report any harassment or discrimination, including with regard to her pay, that she was required to follow. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 771 (1998).

21.    Whether Plaintiff has identified similarly situated employees, that is individuals who have engaged in the same conduct as Plaintiff without such differentiating or mitigating circumstances that would distinguish their conduct or their Defendant's treatment of them for it. *Davis v. City of Phila. Water Dep't*, 57 Fed. Appx. 90, 92 (3d Cir. 2003

22.    Whether Plaintiff has demonstrated that she was treated less favorably, under identical circumstances, than her proffered comparators. *Jones v. Hosp. of Univ. of Pa.*, 2004 U.S. Dist. LEXIS 15711, (E.D. Pa. Aug. 6, 2004)

23.    Whether Plaintiff's right of recovery on her disparate pay claim under Title VII is limited to alleged discriminatory acts that occurred within three hundred (300) days of the filing of her charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e); *White v. BFI Waste Services, LLC*, 375 F.3d 288, 292 (4th Cir. 2004) (only acts that occurred within three hundred day period immediately proceeding the filing of the administrative charge may be considered).

### Additional Issues Of Law Which Defendant Contends Remain To Be Litigated

24.    Whether Plaintiff's Complaint states claim(s) upon which relief may be granted.

25.    Whether Plaintiff has suffered any cognizable damages.

26.    Whether Plaintiff has met her obligation to mitigate any damages.

27.    Whether Plaintiff may recover damages for emotional distress.

28.    Whether Plaintiff is entitled to punitive damages.

## VI.    EXHIBITS

As set forth in Local Rule 16.3(c)(6), the following is "a list of pre-marked exhibits, which each party intends to offer at trial, along with citations to the Federal Rules of Evidence to not any objections thereto lodged by any other party."

### A.    Plaintiff's List of Exhibits

As of February 28, 2008, Plaintiff has not provided Defendant with her list of exhibits which she intends to offer at trial.

### B.    Defendant's List of Exhibits

Defendant reserves the right to modify this list of exhibits that it intends to offer at trial after Defendant receives Plaintiff's list of exhibits.

Defendant reserves the right to use or introduce any thing identified as a potential trial exhibit by Plaintiff. Defendant reserves the right not to offer any thing that it has listed as an exhibit, or to offer only a part of a listed exhibit. Defendant disclaims any obligation to identify exhibits to be used solely for purposes of cross-examination or rebuttal. This list does not include demonstrative exhibits that may be prepared for trial.

| Exh. No. | Description | FRE Relied Upon | Objections /FRE Relied On or "No Objection" |
|---|---|---|---|
| DX 1 | Plaintiff's Charge of Discrimination Dated October 14, 2005 | 402, 801(d)(2), 901(a), 901(b)(4) | |
| DX | EEOC Dismissal and Notice of Rights Dated July 6, 2006 | 402, 801(d)(2), 901(a), 901(b)(4) | |
| DX | Wal-Mart Associate Handbook | 402, 803(6), 901(b)(4) | |
| DX | Wal-Mart Discrimination and Harassment Prevention Policy | 402, 803(6), 901(b)(4) | |
| DX | Wal-Mart Open Door Communications Policy | 402, 803(6), 901(b)(4) | |
| DX | Wal-Mart Coaching for Improvement Policy | 402, 803(6), 901(b)(4) | |
| DX | Plaintiff's Acknowledgement of Receipt of the Wal-Mart Associate Handbook | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Plaintiff's New Hire Orientation Training Plan | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Completed Training Report for Plaintiff | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Plaintiff's Exit Interview Dated May 4, 2005 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Performance Appraisal of Rose Bailey Dated April 19, 2005 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Performance Appraisal of Rose Bailey Dated April 14, 2004 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Performance Appraisal of Rose Bailey Dated April 27, 2003 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Performance Appraisal of Rose Bailey Dated April 5, 2002 | 402, 801(d)(2), 803(6), 901(b)(4) | |

| Exh. No. | Description | FRE Relied Upon | Objections /FRE Relied On or "No Objection" |
|---|---|---|---|
| DX | Performance Appraisal of Rose Bailey Dated May 1, 2001 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Performance Appraisal of Rose Bailey Dated April 22, 2000 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Performance Appraisal of Suzanne Swift Dated March 31, 2005 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| DX | Performance Appraisal of Sandhya Sen Dated October 21, 2005 | 402, 801(d)(2), 803(6), 901(b)(4) | |
| | DEMONSTRATIVE EXHIBITS | | |

## VII.    WITNESSES

### A.    List of witnesses the Plaintiff expects to call, including experts:

As of February 28, 2008, Plaintiff has not provided Defendant with her list of witnesses that she intends to call.

### B.    List of witnesses the Defendant expects to call, including experts:

1.    Defendant does not plan on calling any expert witnesses.

2.    Defendant may call any of the following non-expert witnesses. As current or former employees of Wal-Mart or one or more of its parent, subsidiary and/or affiliate corporations, the following individuals may not be contacted, except through the undersigned counsel.

(a)    Cynthia Brittingham.

(b)    Radcliff Sinclair.

(c)    Toby Fields.

(d)    Jennifer Lawrence.

(e)    Witnesses necessary for impeachment or rebuttal.

(f)     Witnesses necessary to authenticate or otherwise establish foundation for Defendant's exhibits.

Defendant reserves the right to call as witnesses at trial any witness identified by Plaintiff.

### C.    Rebuttal Witnesses.

Each of the parties may call such rebuttal witnesses as may be necessary, without prior notice thereof to the other party.

## VIII. BRIEF STATEMENT OF WHAT PLAINTIFF INTENDS TO PROVE IN SUPPORT OF PLAINTIFF'S CLAIMS, INCLUDING THE DETAILS OF THE DAMAGES CLAIMED OR OF OTHER RELIEF SOUGHT

As of February 28, 2008, Plaintiff has not provided Defendant with her statement of what Plaintiff intends to prove in support of her claims, or the details of the damages claimed or of other relief sought.

## IX. BRIEF STATEMENT OF WHAT DEFENDANT INTENDS TO PROVE AS DEFENSES

### A.    Plaintiff's Title VII Claims

• In order for Plaintiff to prevail on her claims that Wal-Mart terminated her on the basis of her race in violation of Title VII she must show that Wal-Mart intentionally discriminated against her on the basis of her race. To do so, she must demonstrate that Wal-Mart treated her differently than other similarly situated employees who were not within her protected class, and that the reason for the different treatment was unlawful discrimination. Plaintiff does not have evidence to establish a *prima facie* case of discrimination, and alternatively, cannot show that Wal-Mart's actions were merely a pretext for race discrimination, because Wal-Mart's decision to terminate Plaintiff's employment was for legitimate business reasons. Plaintiff's unprofessional and insubordinate behavior amounted to gross misconduct and such conduct is grounds for immediate termination under Wal-Mart policies.

• Plaintiff was terminated by an African-American decision-maker. It is implausible that her termination was motivated by her (African American) race when the allegedly discriminatory decision-maker was within the same protected class as the Plaintiff.

• Plaintiff cannot establish that the non-discriminatory legitimate reason advanced by Wal-Mart for her termination should be disbelieved or that race discrimination was the more likely cause of Wal-Mart's decision. Wal-

Mart's legitimate business reasons for terminating Plaintiff are well-supported. Wal-Mart terminated Plaintiff because she violated Wal-Mart's Coaching for Improvement policy, which prohibits abusive and rude conduct towards any individual, by being rude, unprofessional, and insubordinate on the sales floor. Wal-Mart's decision to terminate Plaintiff was consistent with Wal-Mart's core value of "Respect for the Individual." Wal-Mart did not consider Plaintiff's race in making this decision.

- Wal-Mart had the right to make the business judgment to terminate Plaintiff's employment, particularly because the decision involved subjective factors that it deemed essential to Plaintiff's position. Termination was the only appropriate response to Plaintiff's defiance, berating supervisors on the sales floor in view of customers and fellow associates, on two occasions. In both situations, Plaintiff was unapologetically rude and insubordinate. Plaintiff showed no remorse for her transgression and refused to apologize or even acknowledge that her actions were inappropriate. Plaintiff's race was simply not a factor in Wal-Mart's termination decision.

## B.    Plaintiff's Hostile Work Environment Claim[3]

- Plaintiff cannot prevail a claim for employment discrimination due to a hostile work environment, because Plaintiff cannot establish that: (1) she suffered intentional discrimination because of race; (2) the alleged discrimination was pervasive and regular; (3) the alleged discrimination detrimentally affected her; (4) the alleged discrimination would detrimentally affect a reasonable person of the same race in that position; (5) the existence of respondent superior liability; (6) Plaintiff's unsubstantiated claims of "harassment" do not rise to the level of hostile or pervasive and regular; and (7) Plaintiff's vague and non-specific allegations of unfair treatment are insufficient to support a hostile work environment claim. Wal-Mart did not subject Plaintiff to any discriminatory treatment.

- Plaintiff cannot prevail on her harassment claims because she failed to avail herself of Wal-Mart's open door or reporting policies. Plaintiff admits that, during her employment with Wal-Mart, she never reported any mistreatment or harassment, and never reported to management or the 1-800 Wal-Mart Ethics Helpline number or to anyone that she were being harassed or discriminated against on the basis of her race.

- Wal-Mart intends to prove that it has an absolute defense to charges of harassment because: (1) it does not tolerate any form of discrimination

---

[3]    Plaintiff's Complaint generally identifies "harassment" as a cause of action. For the purposes of trial preparation, Wal-Mart assume that Plaintiff's allegations are an attempt to state a claim for employment discrimination due to a hostile work environment.

or harassment based on an individual's status, including, but not limited to race; (2) Wal-Mart's "zero tolerance" policy applies regardless of whether the conduct rises to the level of unlawful discrimination or harassment; (3) to ensure any harassment is punished, Wal-Mart's Harassment Policy instructs any associate who believes that he or she has been the victim of harassment, discrimination, or inappropriate conduct to immediately report the offensive conduct to a salaried member of management; (4) Wal-Mart exercised reasonable care to prevent and correct promptly any harassing behavior; (5) Plaintiff had the absolute right, pursuant to Wal-Mart's Open Door Policy, to bring any of her concerns to management in a confidential setting without fear of retaliation; (6) Wal-Mart trained Plaintiff on the Discrimination & Harassment Prevention Policy; (7) Plaintiff was well aware of these policies but chose not to utilize them (8) and Plaintiff unreasonably failed to take advantage of the many preventative or corrective opportunities provided by Wal-Mart by not reporting any alleged harassment. Accordingly, Plaintiff will be unable to prevail on her hostile work environment claim.

## C.    Plaintiff' Retaliation Claim

• Plaintiff's cannot prevail on her retaliation claim because Wal-Mart's decision to terminate Plaintiff's employment was based on legitimate, nonretaliatory and nondiscriminatory business reasons. Plaintiff cannot show that the reason for her termination from employment - her blatant insubordination and yelling at a supervisor on the sales floor - was a pretext for retaliation. Plaintiff admittedly did not report any allegations of harassment or discrimination to anyone before she was terminated. Ms. Lawrence acted in conformance with Wal-Mart's legitimate policies when she terminated Plaintiff for insubordination. Plaintiff can offer no evidence that Wal-Mart's reason is false or unworthy of credence.

• Plaintiff's retaliation claim relies upon the allegation that Plaintiff told Ms. Brittingham that she was going to report her for harassment, thereby leading Ms. Brittingham to terminate Plaintiff's employment. Plaintiff's claim fails because: (1) Ms. Brittingham was not the decision maker and did not terminate Plaintiff; (2) Ms. Lawrence, who was the actual decision maker, had no knowledge of any alleged conversation in which Plaintiff told Ms. Brittingham she planned to report her for harassment; (3) Plaintiff's claim that she threatened to report Ms. Brittingham is highly suspect in light of Plaintiff's knowledge of proper reporting procedures and failure to adhere to them; (4) Plaintiff asserts that she told Ms. Brittingham on April 29, 2005 that she intended to report her to the main office for harassment; (5) Plaintiff was terminated on May 4, 2005; (6) Plaintiff admittedly did not report Ms. Brittingham to the main office, or anyone else, between August 29 and May 4, 2005.

**D.    Plaintiff's Pay Discrimination Claim**

•    Plaintiff's pay discrimination claim fails because it is unsupported by the undisputed facts.  Plaintiff's allegation that she received a lower wage increase than similarly situated non-black employees is empirically false.

•    Plaintiff's right of recovery on her disparate pay claim under Title VII is limited to alleged discriminatory acts that occurred within three hundred (300) days of the filing of her charge of discrimination with the EEOC. Accordingly, Plaintiff's disparate pay claim is limited to her 2005 associate review and accompanying wage increase.

•    Plaintiff's disparate pay claims are precluded because she failed to avail herself of Wal-Mart's open door or reporting policies.  Plaintiff was required to follow Wal-Mart's established complaint procedures to report any harassment or discrimination, including with regard to her pay.  Plaintiff's charge of discrimination was the very first time she complained that her wage increase was disproportionately low compared to "non-black" co-workers.  Because Wal-Mart has policies in place to redress claims of discrimination, Plaintiff's failure to avail herself of that policy precludes her recovery on this claim.

**E.    Affirmative Defenses**

•    Plaintiff fails to state a claim upon which relief may be granted.

•    Defendant's conduct toward and treatment of plaintiff was at all times based upon reasonable, legitimate, and non-discriminatory business reasons.

•    Plaintiff did not engage in any protected activity of which the Defendant was aware.
•    Plaintiff has sustained no damages, no financial loss or any other injury.

•    Defendant had an effective harassment, discrimination and retaliation policy in place at the time of the incidents set forth in the Complaint, which plaintiff failed to utilize to alleviate herself of the alleged harassing and/or discriminatory behavior.

•    Any injury allegedly suffered by plaintiff does not constitute emotional distress.

•    Plaintiff is not entitled to punitive damages.

•    Plaintiff has failed to mitigate any damages she alleged she has suffered.

- Some or all of plaintiff's claims are barred by the applicable statute of limitations.

## X.   STATEMENTS BY COUNTERCLAIMANTS OR CROSSCLAIMANTS COMPARABLE TO THAT REQUIRED OF PLAINTIFF

Not applicable.

## XI.   ANY AMENDMENTS TO THE PLEADINGS DESIRED BY ANY PARTY WITH A STATEMENT WHETHER IT IS UNOPPOSED OR OBJECTED TO AND, IF OBJECTED TO, THE GROUNDS THEREFORE

### A.   Plaintiff's Statement:

As of February 28, 2008, Plaintiff has not provided Defendant with any information relating to any amendments to the pleadings.

### B.   Defendant's Statement

Defendant does not desire any amendments to the pleadings.

## XII.   CERTIFICATION THAT THE PARTIES HAVE ENGAGED IN A GOOD FAITH EFFORT TO EXPLORE THE RESOLUTION OF THE CONTROVERSY BY SETTLEMENT

### A.   Plaintiff's Statement:

### B.   Defendant's Statement:

Defendant made a good faith, but ultimately unsuccessful, effort to explore the resolution of this matter by settlement.

## XIII.   ANY OTHER MATTERS THAT THE PARTIES DEEM APPROPRIATE

### A.   Plaintiff's Statement:

As of February 28, 2008, Plaintiff has not provided Defendant with any information relating to any other matters that Plaintiff deems appropriate.

### B.   Defendant's Statement:

1.     Plaintiff and Defendant shall share demonstrative exhibits prior to their use at trial. Demonstrative exhibits to be used solely in opening statement or closing argument need not be shared prior to use.

2.     Plaintiff and Defendant shall identify the witness they will call at trial twenty-four (24) hours in advance.     Failure to comply with this notice requirement will bar the witness from testifying.

3.     Pretrial Motions and Motions in Limine, if any, shall be filed no later than 45 days prior to trial, and shall be limited to ten (10) pages. Answering briefs shall be limited to ten (10) pages. Reply briefs, if any, shall be limited to five (5) pages. Briefing shall be conducted pursuant to D. Del. LR 7.1.2(b). Compliance with D. Del. LR 7.1.1 shall not be required.

This Order shall control the subsequent course of the action, unless modified by the Court to prevent injustice.

IT IS SO ORDERED this _____ day of _____, 2008

_____
United States District Judge

Respectfully submitted,

/s/ Sarah E. DiLuzio
Attorneys for Defendant
POTTER ANDERSON & CORROON LLP
Kathleen Furey McDonough (# 2395)
Sarah E. DiLuzio (#4085)
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
kmcdonough@potteranderson.com - Email
sdiluzio@potteranderson.com - Email

Dated: February 28, 2008

## CERTIFICATE OF SERVICE

I, Sarah E. DiLuzio, hereby certify this 28th day of February 2008, that the foregoing **PROPOSED FINAL PRETRIAL ORDER** was electronically filed with U.S. District Court District of Delaware via CM/ECF (Official Court Electronic Document Filing System) and one (1) true and correct copy was mailed via **FIRST CLASS U.S. MAIL, POSTAGE PREPAID** on the following:

Rose M. Bailey, pro se
612 Candlestick Lane
Newark, Delaware  19702

/s/ *Sarah E. DiLuzio*
Attorneys for Defendant
POTTER ANDERSON & CORROON LLP
Kathleen Furey McDonough (# 2395)
Sarah E. DiLuzio (#4085)
Hercules Plaza, Sixth Floor
1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
kmcdonough@potteranderson.com - Email
sdiluzio@potteranderson.com - Email